UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Jose Ramirez Perez
(A-Number: 240-174-855),

Petitioner,

v.

Todd Blanche, et al.,

Respondents.

No. 1:26-cv-06391-KES-HBK (HC)

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND REQUIRING IMMEDIATE RELEASE

Doc. 1

Petitioner Jose Ramirez Perez is an immigration detainee proceeding with a petition for writ of habeas corpus. Doc. 1. For the reasons set forth below, the petition for writ of habeas corpus is granted.

**I. Background**

Petitioner is a citizen of Guatemala who entered the United States without inspection on November 29, 1981. Doc. 1 at 4. Petitioner has resided primarily in Florida for more than two decades. *Id.* Respondents do not allege that he has any criminal convictions. *See* Doc. 9. Prior to his detention, petitioner was regularly employed, lived with family members, and maintained long standing family and community ties. *Id.* at 4, 7.

On June 27, 2026, petitioner was detained by Immigration and Customs Enforcement ("ICE") officers while he was traveling to work. *Id.* at 4. Petitioner alleges that he was informed that he would be held without bond and that he was treated as though he was subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *Id.*

On August 11, 2026, petitioner filed a petition for writ of habeas corpus. Doc. 1. The petition alleges that petitioner's detention violates substantive and procedural due process, violates the Immigration and Nationality Act ("INA"), and violates the Administrative Procedure Act. *Id.* On August 17, 2026, the court ordered respondents to show cause why the petition should not be granted and ordered respondents to provide the court with "all relevant portions of Petitioner's A-file[.]" Doc. 8.

On August 31, 2026, respondents filed a reply to the petition. Doc. 9. Respondents provided the court with a notice to appear, dated June 27, 2026, and a notice of custody determination, dated August 8, 2026. Docs. 9-3, 9-4. Respondents also indicate that petitioner withdrew his bond request on August 13, 2026. Docs. 9 at 2, 9-5.

**II. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A writ of habeas corpus is a critical check upon the executive power, ensuring that individuals are not detained "except in accordance with law." *Hamdi*, 542 U.S. at 525 (citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001)). The "traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). The district court has jurisdiction over challenges to immigration-related detention pursuant to 28 U.S.C. § 2241. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3)).

**III. Discussion**

Respondents maintain that petitioner is an applicant for admission who is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), but they concede that the Ninth Circuit rejected that argument in *Rodriguez Vasquez v. Bostock*, 183 F.4th 1160, 1165 (9th Cir. 2026), and held that 8 U.S.C. § 1226(a) applies to noncitizens in petitioner's circumstances. Doc. 9 at 1. Respondents also acknowledge that petitioner is "entitled to the ample 'substantial procedural protections' process afforded to all section 1226(a) detainees pursuant to a statutory and

regulatory scheme that has long been considered sufficient to protect the interests of noncitizens." *Id.* at 2. For the reasons set forth below, the court finds that petitioner has not been provided with the procedural protections set forth in 8 U.S.C. § 1226(a) and its implementing regulations, and therefore petitioner's detention violates the INA and the Due Process Clause of the Fifth Amendment.

**A. Immigration and Nationality Act**

"Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (citing 8 U.S.C. § 1226(a)(1)–(2); 8 C.F.R. §§ 236.1, 1003.19). District courts examine whether respondents have provided a detainee with the procedural protections set forth in 8 U.S.C. § 1226(a) and its implementing regulations to determine whether a detainee's initial detention and/or continued detention is lawful. *See Gopie v. Lyons*, No. 25-cv-05229-SJB, 2025 WL 3167130, at *2 (E.D.N.Y. Nov. 13, 2025) ("[a]n individual detained pursuant to Section 1226(a) who identifies some defect in the process governing her detention can raise that defect in a habeas action seeking release."). As noted in *Zurita Navarro v. Warden, Cent. Valley Annex Det. Facility*:

> [C]ourts have found each of the following violations of the requirements of 8 U.S.C. § 1226(a) to provide a sufficient basis mandating a petitioner's release: (1) failure to arrest following or contemporaneously with the issuance of a warrant pursuant to § 1226(a), *J.A.C.P.* [*v. Wofford*, No. 1:25-CV-01354-KES-SKO (HC), 2025 WL 3013328, at *8 (E.D. Cal. Oct. 27, 2025)]; (2) failure to issue a Notice to Appear charging the petitioner as inadmissible prior to, or contemporaneously with, the detention of the petitioner, *Loaeza* [*v. Bausch*, No. 26-CV-00945-MAV, 2026 WL 2150155, at *1–2 (W.D.N.Y. July 27, 2026)] ("In other words, without a valid NTA in place, removal proceedings are not pending, and Respondents have no authority to make an arrest or effectuate detention pursuant to § 1226(a)."); (3) failure to provide the petitioner with an initial custody determination either prior to

> or contemporaneously with detention, *Gopie v. Lyons*, No. 25-cv-05229-SJB, 2025 WL 3167130, at *3 (E.D.N.Y. Nov. 13, 2025) ("By not making a prior or contemporaneous determination of custody, ICE failed to provide pre-deprivation process required in this setting.... ICE Does not have free-ranging ability to arrest and detain people, and figure out the reasons later, like they apparently did here."); (4) failure to provide the petitioner an opportunity to demonstrate to the immigration officer that release would not pose a danger to property or persons and that the petitioner is likely to appear for future proceedings, *Terrero v. Tsoukaris*, No. 26-cv-00869-NCM, 2026 WL 607917, at *3 (E.D.N.Y. Mar. 4, 2026) ("Custody determinations made under § 1226(a) without any opportunity for the detainee to demonstrate his suitability for release are not lawful even if they were based on information particular to the detainee."); and (5) failure to provide the petitioner with the basis for the petitioner's continued detention, *Quijay Garcia v. Mattos*, No. 2:26-cv-01205-RFB-BNW, 2026 WL 1972386, at *5–8 (D. Nev. July 8, 2026) ("Under the government's current procedures, however, because Petitioner was not afforded an initial custody determination, the subsequent bond hearing he was provided required to *guess* the basis for ICE's determination that he is dangerous or a flight risk and then disprove it.... Thus, a post-deprivation bond hearing before an IJ is structurally inadequate to cure the risk of erroneous deprivation created by the lack of pre-deprivation process under the government's current procedures.").

No. 1:26-cv-05661-DAD-SCR (HC), 2026 WL 2294963, at *2 (E.D. Cal. Aug. 10, 2026).

Here, respondents have not provided the court with an arrest warrant. A noncitizen may be arrested and detained under § 1226(a) only "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). "Issuance of a warrant is a necessary condition to justify discretionary detention under section 1226(a). . . . As such, it follows that absent a warrant a noncitizen may *not* be arrested and detained under section 1226(a)." *Chogllo Chafla v. Scott*, 804 F. Supp. 3d 247, 264 (D. Me. 2025) (emphasis in original). Although the court ordered respondents to file any relevant portions of petitioner's A-file, respondents have not provided any evidence that an administrative warrant was issued. *See* Doc. 9; *see also* Doc. 9-1. "Since the Government did not comply with the plain language of section 1226(a), [petitioner's] immediate release is justified." *Chogllo Chafla*, 804 F. Supp. at 264; *Chiliquinga Yumbillo v. Stamper*, No. 2:25-CV-00479-SDN, 2025 WL 2783642, at *5 (D. Me. Sept. 30, 2025) (reaching the same conclusion).

Respondents have failed to assert that petitioner's arrest without a warrant was justified or that a warrant was issued. Therefore, respondents have failed to show that petitioner's continued detention under § 1226(a) is justified.

Moreover, respondents have not demonstrated that petitioner was provided with a timely notice of custody determination. "[T]he requirement that an ICE officer with designated authority conduct an initial custody determination at the outset of detention, wherein the noncitizen has a *pre-deprivation* opportunity to demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding" is one of the "substantial procedural protections against the erroneous deprivation of their liberty" provided by § 1226(a) and its implementing regulations. *Garcia v. Mattos*, 2026 WL 1972386, at *5 (internal citations and quotation marks omitted).

Respondents "must conduct an initial custody determination upon the noncitizen's arrest to determine whether detention or release is appropriate under § 1226(a)" and memorialize the decision on the notice of initial custody determination. *Brito v. U.S. Immigration and Customs Enforcement*, No. 1:26-cv-07869-DC-CSK, 2026 WL 3120979, at *2 (E.D. Cal. Oct. 19, 2026) (citing to 8 C.F.R. §§ 236.1(c)(8) and 236.1(g)); *see also Sanchez Marquez v. Warden, Desert View Facility*, No. 5:26-cv-05368-MBK, 2026 WL 2948874, at *5 (C.D. Cal. Oct. 1, 2026) (the initial custody review "requires DHS to provide written justification for a decision to detain and 'create[s] a record that permits meaningful review of whether the required procedure occurred'" and is "also the 'mechanism' by which noncitizens are advised that they can seek review before an IJ and provided an opportunity to request such review by checking a box on the Form I-286.").

Section 1226(a) and its implementing regulations require that respondents provide petitioner with a timely notice of custody determination so that petitioner has an opportunity to contest his detention at the outset of detention, promptly request a bond hearing before an immigration judge, and know the basis for his detention at any bond hearing before an immigration judge. *See Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *4 (D. Nev. July 7, 2026); *Limon Gonzalez v. Blanche*, No. 2:26-cv-01799-RFB-NJK, 2026 WL 2546938, at *10 (D. Nev. Aug. 28, 2026) ("by refusing to issue Form I-286

notices, Federal Respondents are depriving Class Members—like Petitioner—of the ability to immediately and efficiently request a bond hearing in immigration court."); *Garcia v. Mattos*, 2026 WL 1972386, at *7 ("because Petitioner was not afforded an initial custody determination, the subsequent bond hearing he was provided required him to *guess* the basis for ICE's determination that he is dangerous or a flight risk and then disprove it.).

Even when exigent circumstances allow for a warrantless arrest, the government is "required to act without 'unnecessary delay' and, within 48 hours of arrest, to provide an initial custody determination, warrant, and notice to appear." *Trevor J.M. v. Warden of the California City Det. Facility*, No. 1:26-CV-04364-TLN-CSK, 2026 WL 2410039, at *3 (E.D. Cal. Aug. 18, 2026) (citing to 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.3(c)); *see also* 8 C.F.R. § 287.3(d) (when a noncitizen is arrested without a warrant, "a determination will be made within 48 hours of the arrest, except in the event of an emergency or other extraordinary circumstance in which case a determination will be made within an additional reasonable period of time, whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued.").

Even if petitioner's initial detention without a warrant had been justified, it is clear from the record that petitioner was not provided with a timely notice of custody determination. Respondents' unverified I-213 states that "a custody determination was made to detain [petitioner] without bond." Doc. 9-1 at 2. Other documentation provided by respondents shows that, almost two months after petitioner's arrest, and in a different state than where petitioner was arrested, ICE served petitioner with a Form I-286 notice of initial custody determination. Doc. 9-4. That initial custody determination did not satisfy the requirements of § 1226(a) and its implementing regulations. The "initial custody review, [ ] ensures that DHS only detains a noncitizen where officers determine that detention is justified on an individualized basis and engages 'in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.'" *Vicente v. Warden of San Bernardino Det. Ctr.*, No. 5:26-cv-05106-BFM, 2026 WL 3110053, at *3 (C.D. Cal. Oct. 16, 2026) (quoting *Kelly v. Almodovar*, No. 25-cv-6448-AT, 2025 WL 2381591, at *3 (S.D.N.Y.

Aug. 15, 2025)). The initial custody determination must be conducted by "an ICE officer with designated authority" and the noncitizen must have "an opportunity to demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." *Garcia-Maya*, 2026 WL 1965886, at *4 (internal quotations and citation omitted).

Respondents do not explain how an initial custody determination made almost two months after the arrest could provide petitioner with an opportunity to contest his detention *at the outset of his detention* and request a prompt custody redetermination. Moreover, the agency's stated reason for detention set forth in the I-213 suggests that petitioner's detention was made pursuant to § 1225(b), a statutory detention authority which, as respondents concede, the Ninth Circuit has confirmed does not apply to noncitizens in petitioner's circumstances. *See Rodriguez Vasquez*, 183 F.4th 1160.

A subsequent bond hearing before an immigration does not cure this defect. *See Garcia v. Mattos*, 2026 WL 1972386, at *7 ("In the absence of an initial custody determination, then, this post-deprivation hearing lacks fundamental fairness, because the detainee has no notice regarding the government's allegations against him, and no meaningful opportunity to prepare to disprove those allegations or present mitigating evidence."); *Kelly*, 2025 WL 2381591, at *3 (bond hearings before an immigration judge "are provided for the purpose of custody *re*-determination—a hearing held by an immigration judge after ICE makes its initial decision to detain. 8 C.F.R. § 236.1(d). Such a hearing is no substitute for the requirement that ICE engage in a 'deliberative process prior to, or contemporaneous with,' the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.).

Respondents' records reflect that petitioner has not been afforded the procedural protections contemplated by § 1226(a) and its implementing regulations. "[A]s most courts to address this issue have concluded, the 'failure to comply with the procedures set forth by 8 U.S.C. § 1226(a) and its implementing regulations during a petitioner's initial detention renders that detention unlawful and that unlawfulness cannot be cured through belated compliance with statutory requirements.'" *Sanchez Marquez*, 2026 WL 2948874, at *6 (quoting *Zurita Navarro*,

2026 WL 2294963, at *2). Courts have found that in similar circumstances, where petitioner was not provided the procedural guardrails set forth in § 1226(a) and its implementing regulations, release is the appropriate remedy. *See, e.g., id.*; *Angulo-Barbosa v. Blanche, et al.*, No. 2:26-CV-02102-RFB-BNW, 2026 WL 2676815, at *2–4 (D. Nev. Sept. 11, 2026) ("failure to perform an initial custody determination as to Petitioner at the outset of his detention runs afoul of § 1226(a) and its implementing regulations").

**B. Procedural Due Process**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of life, liberty, or property without due process of law. *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The due process clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas*, 533 U.S. at 693. Procedural due process claims are analyzed "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).

First, petitioner has a clear liberty interest in securing his freedom from detention. "Protected liberty interests 'may arise from two sources—the Due Process Clause itself and the laws of the States.'" *Thompson*, 490 U.S. at 460 (quoting *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). As such, petitioner's interest arises directly from the Due Process Clause. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690; *see Foucha v. Louisiana*, 504 U.S. 71, 86 (1992) ("Freedom from physical restraint [is] a fundamental right[.]").

Second, in determining what process is due, the court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the

function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Turning to the first factor, petitioner has a significant private interest in remaining free from detention. It is "beyond dispute" that a noncitizen's private interest is "fundamental: freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" *Hernandez*, 872 F.3d at 993 (quoting *Foucha*, 504 U.S. at 80). Section 1226(a) and its implementing regulations provide substantive procedural protections that safeguard this fundamental private interest. *See Garcia-Maya*, 2026 WL 1965886, at *6 (The liberty "interest is especially weighty considering the lack of process [petitioner] has received, and that was available to him, upon his arrest and throughout his detention.").

Second, the risk of erroneous deprivation is high. As discussed above, § 1226(a) and its implementing regulations provide several layers of procedural safeguards that ensure that a person's detention serves a legitimate governmental interest. When the government fails to follow its own regulatory procedural safeguards, the risk of an erroneous deprivation of a noncitizen's liberty is high. "ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). And the notice of custody determination "is especially significant because it is served on the detainee at the outset of detention and provides the formal mechanism—a box the detainee may check—to immediately request a custody *redetermination* hearing (*i.e.* bond hearing) before [an] IJ." *Garcia-Maya*, 2026 WL 1965886, at *8 (emphasis in original). Here, because petitioner was not provided with a notice of custody determination until almost two months after his detention and when he was in another state, the risk of erroneous deprivation is high. *Sanchez Marquez*, 2026 WL 2948874, at *5 ("Without an initial custody determination, then, a person could be confined for a prolonged period without any determination that such a profound deprivation of their liberty is actually justified.). There is no indication that respondents provided petitioner with an initial custody determination and instead, respondents' documentation suggests that petitioner was detained under § 1225(b)(2), a statutory detention authority that it acknowledges, based on *Rodriguez Vasquez*, does not apply to

noncitizens in petitioner's circumstances. As such, the second factor weighs in petitioner's favor.

Third, although the government has a strong interest in enforcing the immigration laws, the government's interest in not providing petitioner with a timely notice of custody determination, or a timely opportunity for a § 1226(a) hearing, is low. The effort and cost to respondents to provide petitioner with the procedural safeguards required by the government's own regulations are minimal. *See Rosendo C.R., v. Andrews, et al.*, No. 1:26-cv-08803-TLN-AC, 2026 WL 3307040, at *3 (E.D. Cal. Nov. 2, 2026). Moreover, the "government's interest in enforcing its immigration laws is ultimately served, not hindered, by the procedural protections of § 1226(a) because those protections reduce the fiscal and administrative burden of civil detention by ensuring that only noncitizens who are actually dangerous or a flight risk are detained." *Brito*, 2026 WL 3120979, at *4 (internal citation and quotations marks omitted).

On balance, the *Mathews* factors weigh in petitioner's favor. "In light of the critical importance of the procedures available under Section 1226(a) at the outset of an individual's detention, numerous courts have recognized that section 1226(a) requires an individualized custody determination before detention and failure to do so is in itself [ ] a violation of [petitioner's] due process rights." *Castillo-Hernandez v. Warden, Adelanto Ice Processing Center, et al.*, No. 5:26-CV-05743-MBK, 2026 WL 3034587, at *6 (C.D. Cal. Oct. 9, 2026) (collecting cases). Because respondents have failed to provide petitioner with timely procedural protections required by their regulations, petitioner's due process rights have been violated.

**C. Remedy**

Respondents do not argue that petitioner is a danger or a flight risk. Because petitioner's detention was unlawful under both the INA and the Due Process Clause, the court finds that release is the appropriate remedy. Further, given these violations, it is appropriate to require that if the government seeks to re-detain petitioner under § 1226(a), respondents must provide petitioner with a pre-deprivation hearing where the government must prove by clear and convincing evidence that petitioner's detention is justified. *See, e.g., Angulo-Barbosa, v. Blanche, et al.*, No. 2:26-CV-02102-RFB-BNW, 2026 WL 2676815, at *3 (D. Nev. Sept. 11, 2026); *Rosendo C.R.,* 2026 WL 3307040, at *3; *Sanchez Marquez*, 2026 WL 2948874, at *7

(prohibiting petitioner's re-detention unless respondents could show a material change in circumstances and complied with the requirements of Section 1226(a)).

**IV. Conclusion and Order**

Accordingly, the petition for writ of habeas corpus is GRANTED. Respondents are ORDERED to release petitioner Jose Ramirez Perez (A-Number: 240-174-855) immediately. Respondents are ENJOINED AND RESTRAINED from re-detaining petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that petitioner is a flight risk or danger to the community such that his physical custody is legally justified.[1] Respondents are ORDERED to provide petitioner with a copy of this Order upon his release.

The Clerk of Court is directed to close this case, terminate any pending motions as moot, and enter judgment for petitioner. The Clerk is also directed to serve Golden State Annex with a copy of this Order.

IT IS SO ORDERED.

Dated: November 11, 2026

UNITED STATES DISTRICT JUDGE

[1] This Order does not address the circumstances in which respondents may detain petitioner in the event he becomes subject to an executable final order of removal.